UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**COGNITIVE SCIENCE LLC,**
**also known as**
**"Mindless Products, LLC,"**

                                 **Plaintiff,**

                    **v.**                                 **5:10-CV-797**
                                                                              **(FJS/GHL)**

**IRA KAUFMAN and ONLINE ADVANTAGE INC.,**
**a Virginia Corporation d/b/a/ "Optimized Strategies,"**

                                   **Defendants.**
_____

**APPEARANCES**                                         **OF COUNSEL**

**PINNISI & ANDERSON, LLP**                **MICHAEL D. PINNISI, SR., ESQ.**
111 North Tioga Street
Suite 200
Ithaca, New York 14850
Attorneys for Plaintiff

**MURPHY & MCKENNA, LLC**                  **BRYAN A. MCKENNA, ESQ.**
1461 Franklin Avenue, 2nd Floor
Garden City, New York 11530
Attorneys for Defendants

**SCULLIN, Senior Judge**

                                **MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Mindless Products, LLC, a limited liability corporation registered and located in New York State, brought this action against Defendants Ira Kaufman and Online Advantage, Inc., a corporation organized and located in Virginia, alleging that Defendants engaged in fraud, negligent misrepresentation, unjust enrichment, conversion, and breach of contract.

## II. BACKGROUND

Plaintiff and Defendants executed a contract (the "Performance Agreement") that provided for Defendants to improve Plaintiff's website. The Performance Agreement required Defendants to improve Plaintiff's existing products website by replacing the content management system and the shopping cart portions of the site (the "products site") and to create a new website for Plaintiff for the sale of services and construct an online community for member communications (the "services site"). The agreement also provided for Plaintiff to deposit $15,000 toward a total fixed amount of $46,400. *See id*. at 8. Plaintiff terminated the Performance Agreement and asked Defendants to return a portion of the deposit. *See* Dkt. No. 8, Exhibit "1" attached thereto, at 3.

Currently before the Court is Defendants' motion to dismiss Plaintiff's claims for lack of personal jurisdiction and, alternatively, for failure to state a claim against Defendant Ira Kaufman. Also before the Court are Plaintiff's cross-motion for default judgment and Plaintiff's motion for partial summary judgment regarding its conversion claim. On October 27, 2010, the Court heard oral argument in support of, and in opposition to, these motions. At the close of argument, the Court indicated that it would deny all motions and informed the parties that it would issue a written decision explaining its reasons for its disposition regarding these motions.

-2-

## III. DISCUSSION

**A.     Defendants' motion to dismiss for lack of personal jurisdiction**

"[T]he plaintiff bears the burden of establishing that [a] court has personal jurisdiction over [a] defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (citation omitted). However, where discovery has not yet occurred, a "'plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant.'" *Traver v. Officine Meccaniche Toshci S.P.A.*, 233 F. Supp. 2d 404, 408 (N.D.N.Y. 2002) (quotation omitted).

In addition, "'[t]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits[.]'" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quotation and other citation omitted). Consequently, the New York State long-arm statute, N.Y. C.P.L.R. § 302(a), applies here.

### *1. N.Y. C.P.L.R. § 302(a)(1)*

Section 302(a)(1) states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state[.]" N.Y. C.P.L.R. § 302(a)(1). It is well-settled that a single transaction may suffice for personal jurisdiction if it is of the right nature and quality. *See Bank Brussels Lambert*, 171 F.3d at 787 (citation omitted). In order to determine whether a transaction is sufficient to establish personal jurisdiction, no single criterion is dispositive; and a court will analyze the transaction based on the

totality of the circumstances. *See Toledo Peoria & Western Ry. Corp. v. S. Ill. Railcar Co.*, 84 F. Supp. 2d 340, 343 (N.D.N.Y. 2000) (citation omitted).

    Among the factors that courts consider are

> (1) whether the defendant has an on-going contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract . . .; (3) whether the contract is to be performed in New York; (4) whether the contract requires notices and payments to be sent to New York; and (5) whether the contract contains a New York choice-of-law clause.

*Mortg. Funding Corp. v. Boyer Lake Pointe, LC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005); *see also Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22-23 (2d Cir. 2004) (citation omitted).

    In applying these stated criteria, the Court finds that Defendants do not appear to have an ongoing contractual relationship with Plaintiff. An ongoing contractual relationship generally does not exist where the contract at issue does not contemplate a long-term relationship and is the only contract between the litigants. *See Burrows Paper Corp. v. R.G. Eng'g, Inc.*, 363 F. Supp. 2d 379, 385-86 (N.D.N.Y. 2005); *see also Mortg. Funding Corp.*, 379 F. Supp. 2d at 287.[1]

    Instead, the Performance Agreement at issue here seems to contemplate a short-term relationship. Plaintiff and Defendants signed the agreement on August 4 and 5, 2009, respectively. *See* Dkt. No. 7, Exhibit "4" attached thereto, at 8. The Performance Agreement called for Defendants to complete work on the products site two-and-a-half weeks after delivery of the deposit payment and to complete work on the services site by October 30, 2009. *See* Dkt. No. 7, Exhibit

---

[1] Courts tend to find an ongoing contractual relationship where performance occurs "over an extended period of time and . . . require[s] continued contact between the parties." *Schomann Int'l Corp. v. Northern Wireless, Ltd.*, 35 F. Supp. 2d 205, 209 (N.D.N.Y. 1999) (contrasting such instances with a single performance "scheduled to occur at a specific time in the near future").

"4" attached thereto, at 6. Although it is true that Defendants also executed a Confidentiality Agreement on July 8, 2009, the Confidentiality Agreement similarly does not appear to contemplate a long-term relationship. It only creates obligations in the event that Plaintiff shares confidential information with Defendants. *See generally* Dkt. No. 7, Exhibit "4" attached thereto.[2] This criterion, therefore, weighs against a finding of personal jurisdiction.

Regarding the second criterion, even in the absence of in-person negotiation or execution in New York State, telephonic and electronic communications may provide a basis for personal jurisdiction under C.P.L.R. § 302(a)(1) where the defendant "'project[s]' himself by those means into New York in such a manner that he '"purposefully" avail[s] himself . . . "of the benefits and protections of its laws."'" *Semi Conductor Materials, Inc. v. Citibank Int'l PLC*, 969 F. Supp. 243, 246 (S.D.N.Y. 1997) (quotation and other citation omitted). In fact, the Second Circuit Court of Appeals has "question[ed] whether, in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 30 (2d Cir. 1996) (citation omitted). With the jurisdictional importance of face-to-face meetings on the decline, if "the [parties'] discussions 'significantly advance the making of a corporate contract of importance,'" courts have found that there has been a transaction of business within the state. *Catsimatidis v. Innovative Travel Group, Inc.*, 650 F. Supp.

---

[2] Furthermore, the instant case is easily distinguishable from situations in which courts have found an ongoing contractual relationship. *See George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 653 (1977) (holding that a four-year employment contract "contemplated and resulted in a continuing relationship"); *China Express, Inc. v. Volpi & Son Mach. Corp.*, 126 A.D.2d 239, 245 (1st Dep't 1987) (holding that a visit to install equipment, followed by at least one year of monitoring and, if necessary, servicing the equipment, "manifestly contemplated an ongoing relationship between the parties").

748, 751 (S.D.N.Y. 1986) (quoting *ECC Corp. v. Slater Electric, Inc.*, 336 F. Supp. 148, 152 (E.D.N.Y. 1971)).

In this case, Plaintiff and Defendants negotiated and executed the Performance Agreement via phone and email.[3] *See* Dkt. No. 8, Exhibit "4" attached thereto, at 5. Regardless of the manner of communication, Defendants negotiated and executed a contract with a corporation which Defendants knew was organized and located in New York. In so doing, Defendants projected themselves into New York and met the *Catsimatidis* standard of "significantly" advancing a corporate contract which would have the effect of causing a transaction of business within the state. The negotiation and execution of a contract with a New York corporation, even by electronic means, is sufficient to make a *prima facie* showing of personal jurisdiction. This criterion, therefore, weighs in favor of a finding of personal jurisdiction.

Third, regarding the place of performance, New York State courts have held as a "general rule that the place where a contract is performed is more important for the purposes of jurisdiction than the place where the contract is executed[.]" *Alan Lupton Assocs., Inc. v. Northeast Plastics, Inc*. 105 A.D.2d 3, 7 (4th Dep't 1984) (citation omitted). Here, Plaintiff executed the contract in New York; and Defendants executed the contract in Virginia. However, the New York Court of Appeals has found that jurisdiction is proper under C.P.L.R. § 302(a)(1) where a Defendant engages in purposeful activity directed toward New York State, pursuant to a contract which was only partially negotiated and executed in the state. *See Longines-Wittnauer Watch Co., Inc. v. Barnes &*

---

[3] Plaintiff executed the Performance Agreement in New York, then scanned and emailed it to Defendants. *See* Dkt. No. 7, Exhibit "5" attached thereto, at 7. Defendants executed it in Virginia and returned it to Plaintiff in New York. *See* Dkt. No. 8, Exhibit "4" attached thereto, at 5.

*Reinecke, Inc.*, 15 N.Y.2d 443, 457 (1965). Although Defendants performed their services in Virginia and delivered the new website files to a server in Texas, Defendants' services accrued to a New York entity. Therefore, Defendants purposefully directed their activities toward New York, the state of partial contract negotiation and execution. *See Longines-Wittnauer Watch Co.*, 15 N.Y.2d at 457. The fact that benefits accrued to a New York Plaintiff is sufficient to make a *prima facie* showing of personal jurisdiction. This criterion, therefore, weighs in favor of a finding of personal jurisdiction.

The fourth consideration, whether the contract requires notices and payment to be sent to New York, is not in dispute. The record contains no documentation of notices sent to New York, and Plaintiff sent its payments to Defendants in Virginia. This criterion, therefore, weighs against a finding of personal jurisdiction.

Regarding the fifth consideration, there is no forum-selection clause in the Performance Agreement. Plaintiff points to Clause 15 of the Confidentiality Agreement, which Defendants executed on July 8, 2009, and which provides that "[t]his Agreement is made under, and will be construed according to, the laws of the State of New York. The Parties consent to the jurisdiction of all courts in the State of New York to resolve any dispute that might arise regarding this Agreement." *See* Dkt. No. 8, Exhibit "2" attached thereto.[4] However, the instant case does not concern information exchanged pursuant to the Performance Agreement; it concerns the Performance Agreement itself. Moreover, the Performance Agreement does not incorporate the Confidentiality Agreement. *See* Dkt. No. 7, Exhibit "4" attached thereto.

---

[4] This clause contains both a forum-selection provision and a choice-of-law provision. The Court will refer to this clause as the "forum-selection clause."

Although the forum-selection clause does not govern the Performance Agreement, it represents evidence of the parties' intent when they signed the Performance Agreement. The Confidentiality Agreement's forum-selection clause created a context for the dealings between Plaintiff and Defendants in which litigation in New York State was foreseeable. This criterion weighs in favor of a finding of personal jurisdiction.

For the above-stated reasons, three of the relevant criteria weigh in favor of a finding of personal jurisdiction over Defendants, although no criterion favors it overwhelmingly. New York's long-arm statute is a powerful one, and it is designed to provide a convenient remedy to aggrieved New Yorkers, such as Plaintiff in this case. Accordingly, the Court concludes that sufficient contacts exist between Defendants and New York State to find that Plaintiff has established a *prima facie* case that Defendants transacted business in New York State.

### *2. Substantial nexus*

After showing that a defendant has transacted business in New York, the plaintiff must then demonstrate that its "'claim "aris[es] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," or when"there is a substantial relationship between the transaction and the claim asserted."'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 249 (2d Cir. 2007) (quotation omitted).

Here, for the same reasons that Defendants meet the "transacting business" test, a substantial nexus exists between Defendants and New York State. Defendants communicated with a New York corporation and executed the Performance Agreement for the benefit of that New York corporation. After executing the Performance Agreement, Defendants sent it to Plaintiff in New

York. Defendants performed services for the benefit of a New York corporation and accepted payment from that New York corporation. Defendants performed all of these actions in the context of a prior agreement that contained a New York State forum-selection clause, making litigation in New York a foreseeable possibility. Plaintiff then sued Defendants for breach of the Performance Agreement and tortious conduct in connection with the negotiation and administration of the Performance Agreement. Accordingly, a substantial nexus exists between the cause of action and the forum state. The Court therefore finds that personal jurisdiction exists pursuant to C.P.L.R. § 302(a)(1).

### *3. N.Y. C.P.L.R. § 302(a)(3) - tortious acts committed outside New York with effects inside New York*

Under section 302(a)(3), a New York court may exercise jurisdiction over a non-domiciliary who commits a tortious act outside the state that causes injury to persons or property within the state if that non-domiciliary expects or should reasonably expect that act to have consequences in the state[5] and if it derives substantial revenue from interstate or international commerce. *See* N.Y. C.P.L.R. § 302(a)(3); *Markham v. Anderson*, 531 F.2d 634, 636 (2d Cir. 1976).

Here, Plaintiff alleges tortious conduct on the part of Defendants relating to the contract at issue. Plaintiff claims that Defendants committed the acts of fraud and negligent misrepresentation during their communications with Plaintiff, a New York-based company, and that these acts had

---

[5] When New York courts apply the reasonable expectation requirement, they reason "that the simple likelihood or foreseeability 'that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits and laws of New York such that the defendant may reasonably anticipate being haled into New York court is required.'" *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (quotation and other citations omitted).

financial consequences in New York State. *See generally* Complaint. Plaintiff contends that Defendants committed the acts of unjust enrichment and conversion as a result of their agreement with Plaintiff and that, because Plaintiff is a New York-based company, these acts had consequences in New York State. *See generally* Complaint. Plaintiff's assertions set forth more than a mere likelihood that Defendants' actions would have repercussions in New York State. Although Plaintiff makes no allegations regarding Defendants' derivation of revenue from interstate or international commerce, it appears from the limited record that, in addition to the interstate transaction at issue here, Defendants conduct business in multiple states.[6] Consequently, the Court finds that Plaintiff has set forth a *prima facie* case that Defendants' tortious acts outside New York had foreeseable consequences inside New York; and, as a result, this Court has specific jurisdiction over the tort claims in this case. *See* C.P.L.R. § 302(a)(3).[7]

### 4. Constitutional limitations on personal jurisdiction

Following a finding of personal jurisdiction under the New York State long-arm statute, courts then consider the acts of a foreign corporation in light of federal due process standards. *See*

---

[6] Without discovery, it is difficult to determine how much revenue Defendants derive from interstate commerce; however, as of October 29, 2010, Defendants' website contains a page where Defendants represent that they serve clients in both Virginia and North Carolina.

[7] Although Plaintiff makes a *prima facie* case to support this Court's exercise of jurisdiction over Plaintiff's tort claims, as this case progresses, Plaintiff must provide a basis for these claims that is independent of its contract claims, especially where, as here, both tort and contract claims arise from the same facts. A plaintiff alleging a cause of action for fraud that arises out of a contractual dispute must also demonstrate (1) a legal duty separate and apart from the contractual duty to perform; (2) a fraudulent misrepresentation collateral or extraneous to the contract; or (3) special damages that the fraudulent representation proximately caused and which are not recoverable under the contract measure of damages. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).

*Metro. Life Ins. Co.,* 84 F.3d at 567 (citation omitted). In so doing, courts apply the minimum contacts test of *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny to questions of personal jurisdiction.[8]

When applying the minimum contacts test, a court must evaluate the "quality and nature" of the defendant's contacts with the forum state under a totality of the circumstances test. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The critical determination is whether the defendant has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,'" *id*. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. 2d 1283 (1958)), "'such that [the defendant] should reasonably anticipate being haled into court there,'" *id*. at 474 (quoting [*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,] 297, 100 S. Ct., at 567 [(1980)]).

In addition to satisfaction of the minimum-contacts requirement, the court must be satisfied that the exercise of personal jurisdiction "would comport with 'fair play and substantial justice.'" *Id.* at 476 (quotation omitted). To this end, courts consider "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292, 100 S. Ct., at 564). The defendant has the burden to show that the assertion of jurisdiction would

---

[8] In *Int'l Shoe*, the Supreme Court ruled that due process requires that, to subject a foreign defendant to judgment *in personam*, that defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quotation and other citations omitted).

not comport with fair play and substantial justice. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995).

In the instant case, Plaintiff has made out a *prima facie* case that Defendants purposefully directed their activities at residents of New York when they negotiated and executed a contract with Plaintiff, a New York corporation. Defendants also performed work pursuant to that contract and accepted payment from the New York Plaintiff under that contract. Moreover, Plaintiff's alleged injuries arise from Defendants' alleged breach of that contract, alleged fraud and tortious misrepresentations during contract negotiations, and alleged unjust enrichment and conversion regarding money furnished pursuant to that contract. Plaintiff has an interest in obtaining convenient relief, and New York State has an interest in providing a forum in which its citizens may seek relief. In addition, Defendants have not met their burden to show that the Court's assertion of jurisdiction over them would not comport with fair play and substantial justice. The Court, therefore, finds that the exercise of personal jurisdiction over Defendants comports with federal Due Process standards.

**B.     Defendants' motion to dismiss**

When considering a 12(b)(6) motion to dismiss, "a court must construe in plaintiff's favor any well-pleaded factual allegations in the complaint." *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citations omitted). The defendants are entitled to dismissal for failure to state a claim where the plaintiff's complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff asserts that the causes of action for fraud, negligent misrepresentation, unjust

enrichment, and conversion apply to Defendant Kaufman individually because they relate to his personal conduct during the negotiations and performance of the Performance Agreement. *See* Dkt. No. 8, Exhibit "4" attached thereto, at 2. In addition, at oral argument, Plaintiff claimed that the personnel of Defendant Online Advantage, Inc. is little more than Defendant Kaufman; and, as such, Defendant Kaufman stood to profit personally from the business that Online Advantage conducted.

In the instant matter, it is plausible that the line between personal actions and actions taken on behalf of a corporation might become blurred in such a small company. Plaintiff should have an opportunity during discovery to determine the accuracy of its allegations. Accordingly, at this time, the Court denies Defendants' motion to dismiss Plaintiff's claims against Defendant Kaufman.

### C.     Plaintiff's motion for default judgment

As the Second Circuit has stated on numerous occasions, it is preferable to resolve cases on the merits rather than to grant dismissal on procedural default. *See Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (quotation omitted); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (citations omitted). As a result, when confronting a default, "doubts 'should be resolved in favor of the defaulting party.'" *Powerserve Int'l, Inc.*, 239 F.3d at 514 (quoting [*Enron Oil Corp. v. Diakuhara*, 10 F.3d] at 95, 96). When deciding whether to set aside a default or grant a default judgment, a court considers (1) whether the default was willful; (2) whether the plaintiff will be prejudiced if relief is granted; and (3) whether the defendant has any meritorious defenses to the complaint. *See Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 634 (2d Cir. 1998) (quotation omitted). For a court to find willfulness, the defaulting party must engage in "conduct that is more

that merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citations omitted).

In the present case, Defendants failed to file their response to Plaintiff's complaint by the August 30, 2010 deadline. Defendants, however, claim this was the result of a miscommunication regarding the deadline between Defendants and their counsel. By the time Defendants realized the error, it was after business hours on August 30th and too late to obtain the services of a notary public. *See*. Dkt. No. 12 at 12. Defendants filed their response the next day, with no discernible prejudice to Plaintiff. Plaintiff has made no showing of bad faith or willfulness on Defendants' part. Moreover, Plaintiff has not shown any prejudice as a result of the one-day delay; and Defendants' defenses of lack of personal jurisdiction and failure to state a claim are, to some extent, meritorious. Accordingly, the Court denies Plaintiff's motion for entry of a default judgment.

**D.**     **Plaintiff's motion for partial summary judgment with regard to its conversion claim**

Under New York law, conversion is the unauthorized exercise of dominion or control over specifically identified property that interferes with the owner's rights. *See Gilman v. Abagnale*, 235 A.D.2d 989, 991 (3d Dep't 1997) (citations omitted); *see also Hoffman v. Unterberg*, 9 A.D.3d 386, 388 (2d Dep't 2004) (finding sufficiently stated claim for conversion where funds provided for one purpose were allegedly used for another purpose(citation omitted)), *abrogated on other grounds by Tzolis v. Wolff*, 10 N.Y.3d 100 (2008). Money can be the subject of conversion if it is specifically identifiable and there is an obligation to return it or treat it in a particular way. *See Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st Dep't 1995) (citation omitted).

In this case, Plaintiff and Defendants disagree about the purpose of a $15,000 deposit,

specifically, if it was intended to be applied to the work on the products site or the work on the services site. Plaintiff argues that Defendants converted funds from Plaintiff when they kept Plaintiff's entire $15,000 deposit. *See* Dkt. No. 8, Exhibit "4" attached thereto, at 12. Plaintiff states that the Performance Agreement provided for a $7,000 payment for Defendants' work on the products site and that Defendants did not complete this work. *See id*. Plaintiff reasons that, because no more than $7,000 could have been put toward work on the products site, the remainder of the deposit was intended to pay for the work on the services site. *See id* at 12-13. Since Defendants never attempted work on the services site and did not return the $8,000 when asked, Plaintiff contends that it is entitled to summary judgment as to the conversion of $8,000. *See id*. at 13.

Defendants respond that, during September and October of 2009, Plaintiff repeatedly added to the scope of work for the products site. *See* Dkt. No. 12. at 6-9. Defendants argue that these project expansions caused time delays and cost overruns and that the original $7,000 fee for improvements to the products site was insufficient to cover the costs of the work on the products site. *See id*. at 11-12. Most importantly, Defendants claim that, because the Performance Agreement does not separate or itemize the $15,000 in any way, they were free to apply the deposit to the expanded work already performed. *See id*. at 11.

The parties clearly dispute whether Defendants misused the deposit payment when they retained the entire sum to cover the cost of work they had already performed and then did not return it as Plaintiff requested. It is not clear whether Defendants had an obligation to return the disputed money or to treat it in any particular manner. *See Republic of Haiti*, 211 A.D.2d at 384. This dispute constitutes a triable issue of material fact. Accordingly, the Court denies Plaintiff's motion

for partial summary judgment with regard to its conversion claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss the claims against Defendant Kaufman for failure to state a cause of action is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for entry of a default judgment is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for partial summary judgment regarding its conversion claim is **DENIED**; and the Court further

**ORDERS** that this case is referred to Magistrate Judge Lowe for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: December 17, 2010
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge